**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARRY BOUIE,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF PATERSON, OFFICER HAYDEE SANTANA, in her individual and official capacity, and OFFICER JANE DOE 1, in their individual capacity,<br><br>　　　　　　　Defendants. | Case No. 17-4109 (SDW) (SCM)<br><br>**OPINION**<br><br>July 14, 2020 |

**WIGENTON**, District Judge.

Before this Court is Defendants City of Paterson (the "City") and Haydee Santana's ("Officer Santana") (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This motion is decided without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The undisputed facts in this matter are few. On October 29, 2016, Officer Santana, a member of the Paterson Police Department, responded to a report regarding an emotionally disturbed person in the area of 111 Broadway, Paterson, New Jersey. (D.E. 62-2 ¶¶ 1–2, 61.)[1]

---

[1] Record citations in this opinion are generally to Defendants' Statement of Undisputed Material Facts (D.E. 62-2), Plaintiff's Responsive Statement and Supplemental Statement of Disputed Material Facts (D.E. 66), and Defendants'

When she arrived at the scene, Officer Santana was wearing her gun, ASP baton, and pepper spray. (D.E. 66 at 10 ¶ 24.) She parked across the street from the sidewalk where Plaintiff Larry Bouie ("Plaintiff") was located and broadcast over her police radio that "this is a good one." (D.E. 62-2 ¶¶ 6–7.)[2] When Officer Santana exited her vehicle, Plaintiff, unarmed, began approaching her. (*See id.* ¶ 12; D.E. 66 at 8 ¶ 9.) In response, Officer Santana took out her gun and shot Plaintiff once in the stomach. (*See* D.E. 62-2 ¶ 1.) Approximately 24 seconds elapsed from the moment that Officer Santana stated "this is a good one" to the moment that she shot Plaintiff. (D.E. 62-2 ¶ 16.) Plaintiff survived the shooting but required ten surgeries. (D.E. 66 at 9 ¶ 17.)

Plaintiff commenced this lawsuit on June 7, 2017, and subsequently filed the Amended Complaint on May 7, 2018. (D.E. 1, 21.) The Amended Complaint asserts three claims under 42 U.S.C. § 1983: excessive force by Officer Santana (Count I), failure to intervene by Officer Jane Doe 1 (Count II), and municipal liability with respect to the City for failure to train (Count III). (D.E. 21 at 8–14.) Plaintiff requests compensatory damages of $10 million as well as punitive damages. (*Id.* at 9, 11, 14.) Following discovery, Defendants jointly filed the instant motion for summary judgment and briefing was timely completed. (D.E. 62, 65, 71.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

---

Responsive Statement and Supplemental Statement of Undisputed Material Facts (D.E. 71-1), as well as the record citations contained therein.

[2] According to Officer Santana, this message was meant to indicate to her backup that they needed to arrive at the scene quickly. (D.E. 62-2 ¶ 7.) The phrase was the officers' "own terminology" and not official police radio code. (D.E. 66 at 2 ¶ 7.)

2

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002) (citation omitted).

### III.  DISCUSSION

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Section 1983 does not itself create any rights, it merely provides "private citizens with a means to redress violations of federal law committed by state [actors]." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To bring a § 1983 claim, a plaintiff must prove "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted); *see also Hilton v. Whitman*, No. 04-6420, 2008 WL 5272190, at *4 (D.N.J. Dec. 16, 2008) (noting that the plaintiff must "identify the exact contours of the underlying right said to have been violated").

### A. Excessive Force Claim Against Officer Santana (Count I)

#### 1. Constitutional Violation

"The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)). Thus, to determine whether the challenged conduct amounts to a constitutional violation, courts apply the Fourth Amendment's "objective reasonableness test," which is a "highly individualized and fact specific" inquiry. *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015).

The Supreme Court has articulated three factors that must be considered in evaluating whether the use of force was reasonable: (i) "the severity of the crime at issue"; (ii) "whether the suspect pose[d] an immediate threat to the safety of the officers or others"; and (iii) "whether [the suspect] actively resist[ed] arrest or attempt[ed] to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit has expanded this inquiry to include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (abrogated on other grounds). Additionally, a court must "evaluate objective reasonableness from the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini*, 795 F.3d at 417 (citing *Maryland v. Garrison*, 480 U.S. 79, 85 (1987)); *see also Curley v. Klem*, 499 F.3d 199, 206–07 (3d Cir. 2007).

Here, Defendants argue that it was objectively reasonable for Officer Santana to shoot Plaintiff because he menacingly charged at her when she exited her vehicle, ignoring her instructions to stop. (D.E. 62-1 at 10–11.) Plaintiff is about six feet tall and weighed about 280

5

pounds at the time of the incident, while Officer Santana is five feet three inches tall and weighed about 160 pounds. (*Id.*) According to Defendants, Officer Santana was in immediate danger and did not have sufficient time to use a non-lethal weapon, which is why she used her gun when Plaintiff was about two feet away from her. (*Id.*)

The record contains evidence to support Defendants' version of what happened. Multiple witnesses described Plaintiff's behavior immediately before Officer Santana arrived as "crazy," saying that he was running, yelling, striking the ground with his hands, and terrifying pedestrians. (*See* D.E. 62-2 ¶¶ 19–27.) Witnesses also stated that he quickly approached Officer Santana when she exited her vehicle, despite her instructions to him to stop. (D.E. 71-1 at 12–14 ¶¶ 2, 4.)

However, the record also contains ample evidence that calls into question Defendants' account of the shooting. Just a few minutes prior to Officer Santana's arrival at the scene, Plaintiff encountered an officer identified as "Detective Boone," who spoke with him and determined that Plaintiff could be ill or under the influence of drugs or alcohol. (D.E. 66 at 9 ¶¶ 18–19.) Despite standing only one foot from Plaintiff during this conversation, Detective Boone did not use any force during the encounter and instead walked into police headquarters and asked another officer to notify dispatch that there was possibly an emotionally disturbed person in front of the headquarters building. (*Id.*) Detective Boone then returned to his duties, (*id.*), and his actions indicate that he did not consider Plaintiff to be an immediate threat to himself or others.

With respect to what occurred after Officer Santana arrived on the scene, Defendants admit that Officer Santana testified that she "did not know and did not recall whether she said anything to Plaintiff before she discharged her weapon." (D.E. 71-1 at 13 ¶ 4.) Defendants also admit that witnesses had varying testimonies when asked how far Plaintiff was from Officer Santana when she shot him, with answers ranging from two feet to ten feet. (*Id.* at 12–13 ¶ 3.) The record before

this Court therefore contains genuine disputes of material facts as to whether Plaintiff posed "an immediate threat to the safety" of Officer Santana. *See Graham*, 490 U.S. at 396. These disputes must be resolved by a jury in order to determine whether Officer Santana's use of lethal force was objectively reasonable. Summary judgment for Defendants is therefore not appropriate.

### 2. Qualified Immunity

The doctrine of qualified immunity shields government officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Santini*, 795 F.3d at 417 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted)). To determine whether a defendant is entitled to qualified immunity, a court must "decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In addition, the court must "decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*[3] If the answer to either question is "no," the analysis may end, and immunity applies. *Gardner v. N.J. State Police*, No. 15-08982, 2018 WL 5342715, at *7 (D.N.J. Oct. 29, 2018) (citing *Pitman v. Ottehberg*, No. 10-2538, 2015 WL 6445872, at *6 (D.N.J. Oct. 23, 2015)).

"Generally, the applicability of qualified immunity is a question of law." *Hill v. Algor*, 85 F. Supp. 2d 391, 401 (D.N.J. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 n.4 (3d Cir. 1997)). "However, where factual issues relevant to the determination of qualified immunity are in dispute, the Court cannot resolve the matter as a question of law." *Id.* (citing *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995)); *see also Santini*, 795 F.3d at 420; *Curley v. Klem*, 298 F.3d 271,

---

[3] Judges may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009).

278 (3d Cir. 2002) ("Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."); *Norman v. Haddon Twp.*, No. 14-6034, 2017 WL 2812876, at *6 (D.N.J. June 29, 2017).

As discussed above, there remain issues of fact as to whether Officer Santana violated Plaintiff's constitutional rights. These disputed facts are intertwined with this Court's determination as to whether Plaintiff's rights were clearly established. *See, e.g.*, *Norman*, 2017 WL 2812876, at *6; *Klein v. Madison*, 374 F. Supp. 3d 389, 409 (E.D. Pa. 2019) (denying motion for summary judgment where "[b]oth avenues to qualified immunity, *i.e.*, no violation or, if a violation, it [wa]s excused because the Arresting Officers made a reasonable mistake of law or fact, hinge[d] on disputed facts"). For example, if a jury were to find that Plaintiff was in fact 30 feet away from Officer Santana when she shot him, as he claims, or was in fact only walking towards her, then she would not be protected by qualified immunity. *See Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011) ("It has long been the law that an officer may not use deadly force against a suspect unless the officer reasonably believes that the suspect poses a threat of serious bodily injury to the officer or others." (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (other citation omitted)). Summary judgment based on qualified immunity is therefore denied.

   **B.** ***Monell* Claim Against the City (Count III)**

Generally, a public entity is not liable under § 1983 for the actions of its employees unless the injury results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). A policy or custom can be established where:

> (1) the entity or supervisor promulgates an applicable policy statement and the act the plaintiff complains of is the implementation of that policy; (2) the policymaker, without a formally announced policy, violates federal law itself; or (3) . . . "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of [the] existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."

*Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 177 (3d Cir. 2013) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).  Where the alleged wrongdoing is inadequate training, a municipality may be liable under § 1983 only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  To show deliberate indifference, a plaintiff must show that a training program is inadequate and that the inadequate training can justifiably be said to represent municipal policy.  *Id.* at 390.  The focus in failure to train cases is on the "adequacy of the training program in relation to the tasks the particular officers must perform."  *Id.* at 390–91.  Where the need for "more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," then the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  *Id.* at 390.  Additionally, "to sustain a claim based on a failure to train theory, the identified deficiency in the training program must be closely related to the ultimate constitutional injury.  The failure to train must have a causal nexus with the plaintiff's injury."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (citation, brackets, and internal quotation marks omitted).

Here, Officer Santana testified that she received training to quickly remove her gun from its holster and use it in an emergency situation.  (D.E. 68-3 (Santana Tr.) at 110:20–116:1.) However, she also testified that she was not similarly trained to quickly deploy her ASP baton or

9

pepper spray. (*See id.*; D.E. 71-1 at 10 ¶ 27.)[4, 5] Although the record does show that Officer Santana received regular training on the use of force, (*see* D.E. 62-2 ¶ 61), there remains a fact issue as to whether the City provided Officer Santana with *sufficient* training regarding the use of non-lethal weapons.

Similarly, there remains a fact issue as to whether the City provided Officer Santana with sufficient training to de-escalate and avoid the use of lethal force. This is underscored by Officer Santana's testimony that she did not wait or call for backup before exiting her vehicle because "I've never waited for backup. It's not who I am. . . . 22 ½ years that's what I've done." (D.E. 68-3 at 46:11–14.) A reasonable jury could find such testimony to be indicative of a lack of training, particularly where several uniformed officers were working at a police station just a few feet away. (*See* D.E. 66 at 11 ¶ 29.) Such a determination would be in line with the expert opinion provided by Plaintiff's use-of-force expert, a former chief of police. (*See id.* at 11 ¶¶ 29–31.)

As with Defendants' qualified immunity defense, Plaintiff's *Monell* claim is intertwined with the disputed facts as to whether Officer Santana violated Plaintiff's constitutional rights. If, for example, the jury finds that Plaintiff was in fact only walking towards Officer Santana when she shot him, the jury could also reasonably find that the need for more or different training was so obvious as to amount to deliberate indifference on the part of the City's policymakers. *City of Canton*, 489 U.S. at 390. Even if the jury finds that Plaintiff ran towards Officer Santana, it could still find that a reasonably trained officer could and would have retrieved her pepper spray or ASP baton in the same amount of time that it took Officer Santana to retrieve her gun, as opined by

---

[4] Officer Santana testified that she did receive training on how to use her ASP baton, but not on how to retrieve it. (D.E. 68-3 at 113:3–16.) She received no training on how to retrieve or use her pepper spray. (*Id.* at 111:19–112:11.)

[5] Plaintiff states that Officer Santana was never issued a Taser nor trained on how to use one. (*See* D.E. 65 at 13.) However, the Third Circuit "ha[s] never recognized municipal liability for a constitutional violation because of failure to equip police officers with non-lethal weapons." *Carswell*, 381 F.3d at 245.

10

Plaintiff's expert. (*See* D.E. 68-12 at 35–36.) "Presented with this evidence and using their judgment and common sense, a reasonable jury could [] conclude[] that the lack of training in conflict de-escalation" and the quick use of non-lethal force caused Plaintiff's injuries. *Thomas*, 749 F.3d at 227.

Thus, viewing the evidence in the record in the light most favorable to Plaintiff, this Court concludes that "there are genuine issues of material fact as to whether the C[i]ty exhibited deliberate indifference to the need for [] training in conflict de-escalation . . . and whether the lack of such training bears a causal relationship to [Plaintiff's] injuries." *Id.* (reversing a district court's grant of summary judgment on plaintiff's *Monell* claim). Defendants' motion for summary judgment is therefore denied as to Count III.[6]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.[7, 8] An appropriate order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Hon. Steven C. Mannion, U.S.M.J.
Parties

---

[6] This Court notes, however, that Plaintiff's burden at trial will be "high," and that proving deliberate indifference in the absence of "proof of a pattern of underlying constitutional violations" will be a "difficult task." *See Carswell*, 381 F.3d at 244–45.

[7] The parties agree that Count II against unidentified officer "Jane Doe 1" must be dismissed for lack of identification following discovery. (D.E. 62-1 at 18–19; D.E. 65 at 16.) This Court will therefore dismiss Count II. *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (affirming district court's *sua sponte* dismissal of fictitious parties that were not identified after discovery).

[8] Because public entities are not liable for punitive damage awards, *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), any such claim against the City is dismissed.